IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RUSSELL ROBINSON** | : | CIVIL ACTION |
| Petitioner | : | |
| v. | : | |
| | : | |
| **MICHAEL WENEROWICZ, et al.** | : | |
| Respondents | : | No. 11-CV-4032 |

**MEMORANDUM**

**DITTER, J.**                                                                                              July 23, 2013

Presently before me is a counseled petition for a writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2254 by Russell Robinson. Robinson, who is currently incarcerated in the State Correctional Institution in Graterford, Pennsylvania, challenges his judgment of sentence for various controlled substance violations. For the reasons that follow, the petition will be denied.

**I. FACTS AND PROCEDURAL HISTORY**

The state court summarized the facts leading to Robinson's arrest as follows:

On July 1, 2008, at about 2:00 p.m. Deputy United States Marshals Roger Bomenblit ("Bomenblit") and Chad Grant ("Grant") were in the City of Chester, Delaware County, searching for a wanted fugitive, Horace Calhoun ("Calhoun"). There were two warrants for Calhoun's arrest outstanding: one in connection with a drug trafficking case and a second for absconding from federal probation. Calhoun was described as a forty-five year old black male, 5'6" tall and weighing about 180 pounds. Bomenblit received information regarding Calhoun's whereabouts at approximately noon on the same day. It was believed that Calhoun was in the company of another fugitive who was wanted in connection with a homicide and Calhoun was expected to be in Chester, in a rental SUV, possibly driven by a female. Before setting out for Chester Bomenblit printed a photograph of Calhoun from JNET [Pennsylvania's Justice Network]. Bomenblit was personally

familiar with Calhoun.  Six years prior, Bomenblit was employed by the Federal Bureau of Prisons at a correctional facility in Fort Dix where Calhoun was an inmate.  Bomenblit had frequent contact with Calhoun there over a period of a couple of years.

At approximately 2:00 p.m. Bomenblit, driving an unmarked vehicle equipped with emergency lights, was stopped at an intersection in Chester, when he saw an SUV driven by a male who he believed to be Calhoun.  The SUV passed in front of the marshals with the driver's side closest to them.  Bombenblit followed the SUV and activated his emergency lights.  The vehicle immediately pulled over.  Following the stop a male fitting Calhoun's description abruptly exited the vehicle.  Twice Deputy Marshal Bomenblit ordered the suspect back into his vehicle.  Although Bomenblit believed the driver to be Horace Calhoun, he was in fact Herman Ward.

Defendant Russell Robinson was in the passenger seat.  Bomenblit approached the driver's side door and requested information from Ward, still believing him to be Calhoun.  Ward produced a "Pennsylvania Identification Only" card bearing his name but did not produce a driver's license.  When Bomenblit asked Ward whose vehicle he was driving, Ward replied that it was a rental agreement covering the vehicle. . . . Bomenblit inquired separately as to Ward's and defendant's intended destination and received contradictory information from each man.

When Ward was unable to produce a driver's license Bomenblit asked him to step from the vehicle. . . . At the same time Deputy Marshal Grant approached the passenger side where [Robinson] remained seated in the SUV.  As Grant approached, he observed [Robinson] "fiddling with something down by his legs . . . grabbing or placing something underneath the seat."  He could not however, see what [Robinson] had in his hands.  Grant asked [Robinson] to place his hands outside the window.  He then asked him to step outside the vehicle because, in light of [Robinson's] actions, Grant was concerned for his safety.  [Robinson] was told to sit on the curb near the front of the vehicle and he complied.  When [Robinson] exited the vehicle Grant walked back to the vehicle and standing outside the vehicle he bent over through the open door and saw underneath the passenger seat a plastic sixteen ounce 'party' cup on its side with the opening facing out.  Deputy Marshal Grant could see that the cup contained keys, tissue and a white substance, he believed, based on his training and experience to be cocaine.  He looked into this area because he was

2

>concerned that [Robinson] hid a weapon underneath the seat. While also looking for additional identification for the driver and a possible rental agreement, [Grant] limited his search to the cup area and the center console area. Detectives from the City of Chester responded to the scene of the stop after the cocaine was discovered. One of the detectives told Deputy Marshal Bomenblit that Herman Ward was not Calhoun but was Calhoun's first cousin.

*See Def.'s Exh. G*; Trial Court Opinion, August 28, 2009, at 2-5 (citations and footnotes omitted).

Robinson was charged with possession with intent to deliver a controlled substance, possession of a controlled substance, possession of drug paraphernalia, and criminal conspiracy. Robinson and Ward both filed motions to suppress. The motions were heard in the Court of Common Pleas for Delaware County. On February 2, 2009, the trial court denied the motions to suppress the evidence recovered from the car stop and to suppress Robinson's statement, "Hey officer, the stuff in the cup was mine."[1] The court granted Robinson's motion to suppress later statements he made at the police station.

On April 2, 2009, following a jury trial, Robinson was convicted of possession with intent to deliver a controlled substance and possession of a controlled substance. On May 20, 2009, he was sentenced to a term of 50 months to 120 months incarceration and a mandatory fine of $15,000. Trial counsel filed a timely appeal and a petition to withdraw. New counsel was appointed to represent Robinson in the Superior Court.

---

[1] The admissibility of this statement was never challenged on appeal.

On appeal, Robinson raised one claim, that the trial court erred in refusing to suppress the evidence found under the front passenger seat in violation of *Terry v. Ohio*, 392 U.S. 1 (1968).  The Superior Court specifically noted that Robinson did not challenge the trial court's conclusions that Robinson had no expectation of privacy as a passenger in a rental car driven by an unauthorized driver and that the search beneath the passenger seat was justified based on a reasonable belief that Robinson had access to a weapon.  Judgment of sentence was affirmed on June 30, 2010.

Robinson filed a petition of allowance of appeal in the Supreme Court of Pennsylvania raising a different challenge to the search – whether Pennsylvania recognized a good faith exception to allowing police to conduct an automobile stop based on mistaken identity of the driver without probable cause or reasonable suspicion that the driver was engaged in criminal activity or violation of motor vehicle laws.  The petition was summarily denied on December 2, 2010.

Represented by new counsel, Robinson filed the present, timely petition for a writ of *habeas corpus* on June 20, 2011.  In this petition, Robinson raises two claims: 1) whether the trial court erred in refusing to suppress the evidence found under the front passenger seat in violation of *Terry v. Ohio* and the Fourth Amendment; and 2) whether the imposition of fines and costs violate the Eighth and Fourteenth Amendments.

Respondents have filed an answer to Robinson's *habeas* petition asserting that the claims are non-cognizable and meritless.  Robinson has filed a reply thereto.

## II. DISCUSSION

### A. Standard of Review

Pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition for habeas corpus may only be granted if (1) the state court's adjudication of the claim resulted in a decision contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *Werts v. Vaughn*, 228 F.3d 178, 196 (3d Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)).

### B. Claims

#### 1. Unreasonable Search and Seizure

First, Robinson argues that the trial court violated his Fourth Amendment rights by failing to suppress the drugs and drug paraphernalia found under the front passenger seat.

It is well established that a federal *habeas* court will not consider a convicted state prisoner's claim alleging a violation of Fourth Amendment rights if the petitioner has a full and fair opportunity to litigate the merits of his claim in state court. *Stone v. Powell*, 428 U.S. 465 (1976); *Deputy v. Taylor*, 19 F.3d 1485, 1491 (3d Cir. 1994). In *Stone v.*

*Powell*, the Supreme Court held:

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

Id., 428 U.S. at 494 (footnotes omitted); *see also Cardwell v. Taylor*, 461 U.S. 571 (1983) (per curiam) (consideration of a claim that evidence admitted at trial was the fruit of an illegal arrest could not be considered in a habeas corpus petition as long as the state courts had afforded a full and fair opportunity to litigate that claim). The United States Supreme Court explained that the exclusionary rule was a "judicially created means of effectuating the rights secured by the Fourth Amendment." *Stone*, 428 U.S. at 482. Indeed, "[t]he primary justification of the exclusionary rule . . . is the deterrence of police conduct that violates Fourth Amendment rights." *Id.* at 486. However, the application of the exclusionary rule involves balancing. *Id.* at 488-495.

"The Court reasoned that the incremental benefit in deterring illegal police conduct by applying the exclusionary rule in a *habeas* proceeding did not outweigh the cost to society of excluding relevant, reliable evidence in a criminal prosecution." *Gilmore v. Marks*, 799 F.2d 51, 54-55 (3d Cir. 1986), *cert. denied*, 479 U.S. 1041 (1987). Even a potentially meritorious Fourth Amendment claim is barred on *habeas* review when the petitioner had a full and fair opportunity to litigate it. *Deputy*, 19 F.3d at 1491 (citing *Gilmore*, 799 F.2d at 57).

Robinson does not claim that he was denied an opportunity to present and argue this Fourth Amendment claim. It is clear from the record that he had a full and fair hearing on his motion to suppress prior to trial. Moreover, both the Superior Court and Pennsylvania Supreme Court considered his claims on appeal. Thus, I conclude that Robinson had a full and fair opportunity to litigate his Fourth Amendment claims in the state courts. Accordingly, further review in this court is barred by *Stone v. Powell, supra.*

### 2. Imposition of costs and fines

Next, Robinson contends the trial court violated his Eighth and Fourteenth Amendment rights by imposing a state mandated minimum fine and the payment of court costs on him without first making a determination as to his ability to pay. The Commonwealth argues that this claim was never presented to the state courts and therefore is unexhausted and otherwise without merit. I find this claim is not cognizable on federal habeas corpus review.

A federal court will not entertain a petition for writ of habeas corpus unless the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Moreover, the claim raised must attack "the validity of the fact or length" of custody. *Heck v. Humphrey*, 512 U.S. 477, 482 (1994). In other words, there must be "a nexus between the petitioner's claim and the unlawful nature of the custody." *See McKnight v. Corbett*, 2011 U.S. Dist. LEXIS 139191, *57 (E.D. Pa. 2011) (quoting *Bailey v. Hill*, 599 F.3d 976, 980 (10th Cir. 2010)). Although custody is

liberally construed, the Court of Appeals for the Third Circuit has held that the imposition of a fine "is not enough of a restraint to constitute 'custody' within the meaning of the habeas corpus statutes." *Obado v. New Jersey*, 328 F.3d 716, 718 (3d Cir. 2003).

As in *McKnight*, Robinson is in custody but his claim challenges only the fines levied against him as the result of his conviction. Any relief granted would not impact his custody and thus, his claim is not cognizable under 28 U.S.C. § 2254.

### III. CONCLUSION

After consideration of the issues raised in this petition and a review of the evidence of record, I conclude that Robinson's petition for writ of *habeas corpus* is without merit. Accordingly, the petition will be denied.

Similarly, because Robinson's claims are both legally and factually meritless, there is no need to conduct an evidentiary hearing, as it would not change the outcome of this matter. *See* 28 U.S.C. § 2254(e)(2); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("an evidentiary hearing is not required on issues that can be resolved by reference to the state court record") (citations omitted).

An appropriate order follows.